### DRESSEN vs. COX.

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court.* The plaintiff complains that the de-fendant, pretending to be the agent of one Morris, but being altogether without authori-ty from him, caused him, the plaintiff, to be

The verdict of a jury will be disregarded if it is evident-ly contrary to law.

The lessor may expel the lessee, if he does not pay the rent. He may de-mand bail, tho' he exercises his right in part the furniture.

*This opinion was delivered in May, 1823, but a rehearing was granted.

East'n District
June, 1824.

DRESSEN
vs.
COX.

A justice is not responsible, *civiliter* for an unjust judgment.

arrested, whereupon he was imprisoned for want of bail—and afterwards the defendant went to the house occupied by the plaintiff, turned out his servant and housekeeper, forcibly opened his bureau, chests, armoires, &c. and took the key of the house, and that of the gate—and afterwards carried away all the defendant's furniture, effects, &c. in the house, his horses, cows, &c. all of which he still unjustly detains—that, after the plaintiff's imprisonment as aforesaid, in the suit instituted in Morris' name, by the defendant, as Morris' agent, he, the defendant, issued a citation, as a justice of the peace, against the present plaintiff, and afterwards gave judgment in favor of Morris, &c.

The defendant answered that at the period of the transactions, stated in the petition, he was, and still is Morris' agent, and the plaintiff being indebted to Morris, the defendant, as Morris' agent, had him arrested, whereupon he was and still remains a prisoner for want of bail ; the plaintiff being from home, and having no one to protect his property, the defendant did seize the goods in the house for the landlord, shut and locked up the house and took the keys, made an inventory of the goods,

holding them in deposit for said Morris, the landlord.

He annexed the proceedings in the case of *Morris* vs. *Dressen*, before the defendant, as justice of the peace, and averred they were legal and just—that the plaintiff did not recuse him. He denied the other allegations. The case was tried by a jury.

Fisher deposed that he went with the plaintiff's servant woman, on the plaintiff being imprisoned, to request that she might be permitted to remain in the house ; the defendant replied she might, if she could secure the rent—otherwise she must quit it. The defendant went on the same day and opened and examined trunks, armoires, &c. in the house, in presence of the witness. He took possession of the house, left a person to take care of it, and turned out the plaintiff's servant woman. The deponent thinks she was capable of taking care of the plaintiff's house and goods ; she is free, and he thinks her honest and faithful. The plaintiff had three horses, a dray and two carts. One of the horses cost $170, the other 60, and the last 40. He made from $24 to 30, and 35 per week, with the dray, out of which he paid a man $20 per month. There were not

many goods in the house at the time ; there were two trunks of shoes. Soon after taking possession, the defendant removed the goods and leased the house. The defendant went into the house at mid-day, several persons being present. But when he locked it up, there were only three persons, a Mr. Kay, the deponent and servant women. The woman claimed whole of the furniture and two horses, as hers. The defendant gave her some clothing and bedding, at the time, and afterwards other articles.

Offran deposed that in 1820, he sold to the plaintiff, a horse for $170, it was in the plaintiff's possession in July last.

Fox deposed that in August last he purchased a horse for $26, at six months credit, at auction on the levee. He thinks it was the best of them, that were then sold.

It was admitted that the other two were the plaintiff's, and were sold for rent, by the defendant's constable.

Baptiste deposed that about fourteen months ago, he sold a small grey horse to the plaintiff for $60. He knew the plaintiff had three horses about eight months ago, and the one sold by the witness was the only grey one among them.

East'n District.
June, 1824.

DRESSEN
vs.
Cox.

Preval deposed he hires his carts to the corporation, at three dollars per day.' A dray earns from 2 1-2 to 3 dollars a day. A drayman's wages are twenty dollars a month.

This closed the testimony for the plaintiff.

Hawkins, a witness of the defendant, deposed, he is attorney in fact of Morris, and as such appointed the defendant, as agent to collect the rents of Morris, who is owner of a house then occupied by the defendant. The witness understanding that the plaintiff was attempting to remove his property out of the way, defired the defendant to sue him, and told him that if he was not vigilant, he would lose the debt. The plaintiff paid his rent very punctually at first: but the witness soon after noticed a great change in the appearance of the plaintiff's shop; nearly all the goods were gone, and scarcely any thing remained but empty boxes, and a few shoes. He had several workmen in his shop, among whom was Fisher, one of plaintiff's witnesses. The plaintiff was for a while indulged, till the rent due amounted to about $300, by the discretion of the witness. On suit being brought, the plaintiff was imprisoned, and his woman servant called on the witness, claiming most of the goods, and soli-

citing leave to remain in the house—she was answered she might do so, if she would secure the rent; on her declining to do so, the house was shut up, the plaintiff was held to bail by the witness's directions to the defendant.

Kay deposed that the inventory produced, contains a correct list of the whole property left by the plaintiff in the house, at the time of his imprisonment, except what was delivered to his servant woman, at the shutting up of the house, and afterwards on a judgment obtained by her; part of these goods were sold at a constable's and part at the sheriff's sale. On the plaintiff being imprisoned, the witness went to his house with the defendant. There was no body in it. Scholastique, the plaintiff's servant, was in the yard, when the defendant shut the house. He does not recollect that she claimed any thing then; but on the second time the witness went there with the defendant, she claimed a considerable number of articles, part of which the defendant delivered to her. The inventory was made by the witness on the day of its date; the property was then in N. Cox's own house, with the exception of three horses, one of which was bought by said Cox, and the other by the witness, who thinks he paid the

East'n District.
*June,* 1824.

DRESSEN
*vs.*
COX.

full price for him.    He has seen the defendant pay for their keeping.

Patch, deposed that, a few days after the plaintiff's imprisonment ; Scholastique, his servant claimed from the defendant, part of the property, in the house then shut up.   The defendant went thither with her, and gave her thirty-five gowns, or dresses, and a number of other articles of man's, woman's or boy's apparel, claimed by her, which appeared to have been worn.   She claimed almost every thing. The three horses were sold by the witness on an execution, after due advertisements, and produced more than he would have been willing to give for them.   One of them was sick, and he would hardly have taken him as a gift. He was instructed by the defendant to sell them, at six month's credit.   He and Kay were at the time of the sale, and are still officers attached to defendant's office of a justice of the peace.   Scholastique sued the defendant for the articles of wearing apparel, which did not appear to be worn.

Holland deposed that to the best of his recollection, the whole of the goods in the inventory, except the horses were delivered into the sheriff's office by the direction of the defen-

East'n District
June, 1824.

DRESSEN
vs.
COX.

dant.    Part of them were claimed by, and delivered to a woman of color,—the rest was sold at public sale.

The plaintiff's counsel admitted that Kay, who was gone, would, (if present) depose that the whole of the above articles were delivered to the sheriff.

The documents introduced, besides the inventory, are a judgment obtained by Scholastique, against the present defendant for sundry articles, in the plaintiff's house.

A judgment rendered by the defendant, as justice of the peace, in favor of Norris against the present plaintiff, by default, for $25 claimed for house rent, and the execution issued thereon, on which the three horses were sold for $73.

A letter from the defendant to the plaintiff, in which the former proposes to the latter to liberate him, if he will give surety or authorise him to sell the goods on a credit of four months —if the proceeds cover the debt.  The answer, on which a promise is made, to secure or pay the debt, after a discharge from jail.

Another letter in which the plaintiff prays the defendant to sell his goods, let his dray and carts be employed, or liberate him, promising honestly to pay.

East'n District.
June, 1824.

DRESSEN
vs.
COX.

There was a verdict, and judgment for $1300, in favor of the plaintiff. The defendant prayed and obtained a new trial.

On the second trial, the evidence, given on the first, was introduced, and a document to establish that the plaintiff was committed to jail on the 19th of July, and discharged by the defendant, on the 13th of November, 1821.

The court charged the jury "that the imprisonment for want of bail was legal, and that no posterior act of the defendant made it otherwise,"—that the defendant did not appear to be Morris' agent, in the case tried by him—that if he was, although there might be some indelicacy in his sitting in the case, no law known to the court prohibited it—that if any law prohibited it, the present plaintiff did not suffer by it, because the judgment was correct, and a similar one would have been given by any other justice. To this charge the plaintiff's counsel excepted.

There was again the same verdict and judgment, and the defendant again prayed for, and obtained a new trial. To the opinion of the court the plaintiff's counsel excepted, and took his appeal.

The appeal was dismissed as premature. 12 Martin, 536—and the cause remanded.

The plaintiff's counsel waived his right to a trial by jury, and the cause was, by consent, submitted to the district court, on the evidence on file.

There was judgment for the defendant, and the plaintiff appealed.

His counsel urges that this court ought, as the new trial was improperly granted upon the second verdict, to reverse the judgment and pronounce that which was given in the district court, on the second verdict, and which was afterwards improperly set aside.

The new trial was claimed on the ground that the verdict was contrary to law and the evidence—and the damages excessive.

The first ground of complaint in the petition is that the plaintiff, pretending to be the agent of Morris, but being altogether without authority from him, caused the plaintiff to be arrested, whereupon he was imprisoned for want of bail.

The defendant has averred and uncontestibly proven by the testimony of Hawkins, the attorney in fact of Morris, that he, Hawkins, requested the defendant to collect the rents from Morris's tenants, particularly from the plaintiff, that he Hawkins, expressly requested

East'nDistrict.
*June,* 1824.

DRDSSEN
*as.*
Cox.

the defendant to have a suit instituted against the plaintiff, and have him held to bail.

On this first ground the evidence and the law so fully support the defendant, that we cannot see how the jury could find a verdict against him.

The second ground is that the defendant forcibly entered the plaintiff's house, took away his furniture and other goods, and illegally detains them.

The evidence is that at mid-day, the defendant attended by Kay, a constable, took possession of the property found there, secured it, as distrained property for house rent—had an inventory made—and the property has since been delivered up to the officers of justice, and was actually sold according to law. Fisher one of the plaintiff's witnesses, swears the defendant turned out the plaintiff's servant; Kay a witness for the defendant swears that she was not in the house, but in the yard, and that there was nobody in the house, when the defendant came and secured the property, and locked up the house.

We are, in this respect, unable to discover on what ground the jury could find a verdict for an illegal seizure and detention.

VOL. II. (N. S. 81

DRESSEN
vs.
COX.

That the plaintiff was not indebted to Morris for house rent, is not alleged in the petition, and the defendant has given evidence of the plaintiff being so indebted to Morris, by the highest proof known to the law, the judgment of a court—in a suit in which the defendant was charged, and Morris had judgment.

The last ground is, that the defendant, though an agent of Morris's, took cognizance of a claim in a suit between Morris and the present plaintiff, brought before him as a justice of the peace. It is not alleged that the claim was not a just one—and nothing supports the idea, that the judgment rendered was not such a one as any other justice would have given. The then defendant did not think proper to resist Morris's demand, nor to pray for an appeal.

It is in evidence that Morris had empowered Hawkins, a lawyer, to act as his attorney in fact, and that Hawkins had requested the defendant's attention to the collection of the debts due Morris. In these collections the defendant was subordinate to Hawkins, and had the present plaintiff seen fit to plead, instead of acknowledging the claim, by declining to plead, Hawkins would probably have attended

East'nDistrict.
June, 1824.

DRESSEN
vs.
COX.

to the prosecution of the claim. It is a matter of every day's occurrence, in this city, for a creditor to leave h's accounts with a justice of the peace for collection—the latter tries to get the money without a suit—if that appears not to produce the desired effect, he issues a citation, and it is hoped ceases afterwards to consider himself as the agent of the plaintiff. Such appears to have been the justice's conduct in the present case.

There is not the least shadow of evidence, that induces a belief that he was moved by any other desire than that of obtaining Morris's money by legal means.

A jury are undoubted judges of questions of fact, and of the quantum of damages, and it is the duty of a court to respect their decisions on these points; but the court cannot skrink from the exercise of its legal duty, to examine on the complaint of a party, against whom a verdict is pronounced, whether it be consonant to law and evidence. In the discharge of that duty, we think the district judge acted correctly, each time he granted a new trial, in the present case.

It is true the plaintiff has suffered, and severely suffered—but his sufferings were the

East'n District. consequence of his own indiscretion and ill
*June,* 1824. conduct—they were not aggravated by any
DRESSEN thing done by the defendant out of the line of
*vs.* his duty—in the situation in which he stood to
COX. the plaintiff, and his landlord. On the contra-
ry, the evidence shews that every indulgence,
which, without injuring the rights of the latter,
could be granted by the defendant, was cheer-
fully tendered.

We would no doubt have been better plea-
sed, to have found that the defendant had suf-
fered the small suit, which he tried as a jus-
tice of the peace, to be carried before another
magistrate; but on the severest scrutiny, though
his conduct in this respect may be indiscreet,
nothing shows the least injury resulting or in-
tended to result from it; no undue advantage
attempted to be secured: and though we would
be very far from wishing to protect, from the
consequences of his injustice, a magistrate
found guilty of oppression in the execution of
his office, we cannot refrain from declining to
condemn one doomed by the too eager, though
honest zeal of a jury, in a case in which the
evidence presents him, as free from any guilt,
and the law is clearly in his favor—when the
inferior court, in the consciencious discharge
of its legitimate duty has relieved him.

It is useless to examine the bill of exceptions to the charge of the court, as the case is not to be remanded, and if it was, it still would be useless, as the jury having been waived, there would be no charge to be given.

Under these impressions, we cannot but approve of the judgment of the district court.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.

A re-hearing was granted, on the motion of the plaintiff, and after an argument,

PORTER, J. delivered the opinion of the court. This case has been kept a much longer time, than usual, under advisement, the delay however, which has occurred in giving a decision, has not arisen from any difficulty in the question, but from the circumstance of some gentlemen of the bar, who were not counsel in the cause, having offered us their opinion that the former decree of the court required revision. As that opinion was no doubt not hastily given, we felt it our duty to examine the subject with more than ordinary attention, and to delay deciding it until we were satisfied it was impossible for us to coincide in the view, taken by

DRESSEN
*vs.*
COX.

the learned persons, who have been so good as to assist us on this occasion.

Tho facts of the case were so fully detailed, in the first opinion delivered, that it is unnecessary to go into them now, and the reasons why we came to the conclusion then expressed being those, which still influence us, we deem it useless to repeat them, and shall therefore confine our observations to the questions of law, raised in the present argument.

The first position of the counsel for the plaintiff is, that distress for house rent, as understood by the English law, does not exist in this country; and that the judgment of the court goes to establish it.

The rules of the common law on the subject of rent, as the counsel correctly states, have no force whatever in this country, and they neither influenced our judgment, nor entered for one moment into our consideration in forming our first opinion. If, however, the provisions of our law should be found in any respect similar, we cannot refuse to give them effect, because they bear a resemblance to the regulations of the common law, on the same matter.

The second ground taken is,—that it was not legal for the defendant to take possession

of the property of the plaintiff, after he had se-
cured his person ; because if he had applied to
the district court, at the same time, and for the
same debt, for an order of bail and an order
of seizure and sequestration, the court could
not have granted both.

The latter part of this proposition may or
may not be true ; but as that is not the point
before us, we refrain from expressing any opin-
ion on it ; the defendant applied for an order
of bail alone, and this, we have no doubt, the
court correctly accorded him. Our law ex-
pressly provides that in all actions where the
amount due is above $100, if the demand be
ascertained and specific, the defendant may be
held to bail on the plaintiff making an affidavit
of the amount really due. 1 *M. Dig.* 482.

Now, as there cannot be a doubt that the
lessor who applies to a court of justice, to en-
force the payment of the money due him on a
contract of lease brings an action in the legal
sense of the word, it follows that on complying
with the requisitions of the statute, he had a
right to secure the person of his debtor.

But it is said he could not exercise such a right
because he had a lien on his property. It
would have greatly aided our investigation on

DRESSEN
vs.
COX.

this point. if he counsel had cited any authority to sustain this assertion, or furnished us with any reason in its support, our reflections have led us to the very opposite conclusion. We think and have always thought that a creditor who obtained security from the debtor, by other persons joining in the obligation, or by taking mortgage, or by acquiring liens on his property, did so to increase the rights which a contract, merely personal would have afforded. But the position we are now examing, gives a different, and to us, entirely a novel view of the matter, namely—that by taking a lien on the property of the debtor, the creditor does not add that to the obligation he had on the personal contract, but substitutes one for the other—that is, novates it,—we consider this doctrine as entirely unsound. The surety, lien, mortgage, and pledge are accessaries to the original obligation ; they are given to secure it ; and if they all perished, the contract would still remain, and could still be enforced. 8 *Martin*, 59.

The right, which the defendant exercised on the property in this case, is peculiar to the contract of lease, and must be treated by the particular laws on this subject, and not by the

general rules prescribed for the enforcement of ordinary claims. By the 5th law of the 8th title, of the 5th *Partida,* it is expressly and positively declared that the lessor may, on the failure of the lessee, to pay the rent, expel him without being liable to any fine or penalty—that every thing found in the house will be bound for the rent, and that the landlord may retain it as a pledge, in spite of the tenant, until he pays the rent due. Under this law the defendant seized and took into his possession, the property of the plaintiff, found on the leased premises, and we are of opinion that he acted legally in doing so.

It is satisfactorily proved that a true and faithful inventory was made of all the effects seized.

The defendant is not responsible for giving an erroneous judgment in his character of justice of the peace, admitting that which he rendered to have been such, and nothing on the record shews that he acted maliciously or corruptly.

We repeat therefore, our conviction, that the plaintiff had no cause of action. The injury, which he sustained, was owing in part to his own misconduct ; in part to the great se-

East'n District verity of our laws, in regard to lessees.   Nei-
June, 1824.
                 ther of them however, can be imputed to the
DRESSEN         defendant as a fault, or make him responsible
    vs.
Cox.            in damages.

It is therefore ordered, adjudged and de-
creed, that the judgment of the district court
be affirmed with costs.

*Dennis* for the plaintiff, *Preston* for the
defendant.